

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS
(Dallas Division)

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JAN 2 9 2003
CLERK, U.S. DISTRICT COURT
By _____
Deputy

|  |  |
|---|---|
| E3Group, Inc., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Greg Swick and Fred Kline, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. <br> 3:02-CV-2700-M |

## MOTION TO DISMISS AND MEMORANDUM OF LAW

Comes now defendants Greg Swick and Fred Klein (misnamed by Plaintiff as "Fred Kline") and move to dismiss the captioned action pursuant to Fed. Rules Civ. Proc., Rules 12(b)(5), 12(b)(6) and 12(b)(7). Plaintiff E3Group, Inc ("E3") did not properly use provisions of the Texas Long-Arm Statute [TEX. CIV. PRACTICE AND REM. CODE § 17.041, *et seq.*] to hail Messrs. Swick and Klein before this Court. Furthermore, E3's Complaint fails to state a cause of action under the Texas Deceptive Trade Practices Act [TEX. BUS. AND COMM. CODE §§ 17.41-.63] ("DTPA") because of the exemption provided in § 17.49(f). Finally, E3's Complaint fails to join Messrs. Swick's and Klein's employer, Ultimate Software Group, Inc. ("USG"), which is a necessary party to these proceedings, and fails to provide an adequate reason why it was not joined.

## STATEMENT OF FACTS

In September 2000, E3 agreed to pay USG $263,000 for a license to use payroll and human resource software designed and marketed by USG, executing a Licensing Agreement that expressly sets out what the software does and E3's agreement to USG's limited warrantees as to such performance. Prior to its purchase, E3 spent four months reviewing and analyzing the functionality and usefulness of the software in its business. Clearly it knew what it was buying. A copy of the Licensing Agreement is attached hereto as Exhibit A.

Subsequently, E3 negotiated two separate payment plan addendums, in each instance reaffirming the original contract, and reiterating its promise to pay $263,000 for the license. Clearly, it knew what it had bought. Copies of the addendums are attached hereto as Exhibit B.

E3 made some payments under the License Agreement and the addendums but then stopped and has refused demands to honor its payment obligations. Rather than pay for the software, E3 filed a Petition in Texas state court, making allegations against the company identical to those set out in its Complaint in this civil action. A copy of E3's Petition is attached hereto as Exhibit C.

Clearly E3 knew what USG's software could and could not do: E3 investigated functionality and usefulness prior to executing the Licensing Agreement, which expressly set out the features and functions that USG stood (and stands) behind. E3 executed the payment plan addendums, and in each instance reiterated its acknowledgment of the original contract. USG's defenses and counterclaims are well pleaded in the Texas state court action, which, as noted by E3 in its Complaint, are scheduled for trial in March 2003, and the Company looks forward to its day in court in anticipation of a favorable outcome.

Swick and Klein were the USG salesmen responsible for dealing with E3. E3 pleads facts demonstrating they acted as USG's fully disclosed agents in the negotiation of the parties' contract and they do not dispute these allegations. So why bring these claims against them here and now – away from the Texas state court action and on the eve of that trial? E3 asserts that it brings its claims against Swick and Klein in this Court because it does not want to lose its place on the Texas state court's docket. That makes little sense; as is clear from its Petition, E3's claims against Swick and Klein here are the same as those made against USG in the Texas state court case, so that whatever discovery it should require ought to be done and it should be able to proceed to trial without delay. E3's assertion that the case law providing for an agent's DTPA liability has recently changed is similarly curious; they do not cite any authority for their proposition that the law has changed and it has long been settled that an agent can be personally liable for his own torts, which presumably would include the fraud-type liability imposed by the DTPA.

The claims against Swick and Klein in this action, apart from the failures of the Complaint under the Federal Rules of Civil Procedure, are plainly dirty pool, designed to obtain some advantage in the Texas state court proceeding or, considering the service method chosen, perhaps surprise them. E3 does not state a claim against Swick or Klein under the DTPA, and these claims should be dismissed regardless of the determination of the other bases for dismissal urged here. And as to the remainder there is no good reason for this Court to permit E3 to maintain its action absent bringing in USG, which is already subject to these same claims in another court.

## ARGUMENTS AND AUTHORITIES

1.   **E3's Method of Service Fails Under the Texas Long-Arm Statute.**

Although E3 clearly knew how to reach both Swick and Klein, it exercised its rights under the Texas Long-Arm Statute [TEX. PRACTICE AND REM CODE § 17.041 *et seq.*] and, as described in its Complaint, utilized substituted service on the Secretary of State pursuant to § 17.044(b). Because E3 relied on provisions of the Statute other than §§ 17.043 or 17.044(a)(3), it was obliged under § 17.045(a) to provide a statement of the "name and address of the nonresident's home or home office" to which the Secretary should "immediately mail a copy [by registered or certified mail] of the process[.]"

As is apparent from E3's pleadings and the return of process, it directed the Secretary to mail its Complaint and this Court's Summons to USG's offices in Westin, Florida, and did not (indeed, could not) allege that address was the defendants' "home or home office." Under these circumstances, service was invalid. *World Distribution, Inc. v. Knox,* 968 S.W.2d 474, 477-78 (Tex. App.—El Paso 1998, no pet.); *Boreham v. Hartsell,* 826 S.W.2d 193, 197 (Tex. App.—Dallas 1992, no pet.); *Chavez v. Todaro,* 770 S.W.2d 944, 946 (Tex. App.—Houston [1st Dist.] 1989, no writ).

In *Bludworth Bond Shipyard, Inc. v. M/V Carribean Wind,* 841 F.2d 646 (5th Cir. 1988), the Fifth Circuit considered this exact situation, in which a plaintiff failed to provide a statement of the home or home office of the non-resident, and found a default judgment void for lack of personal jurisdiction due to a failure of effective service. "In Texas, service of process under the long-arm statute must be in strict compliance with the statute." *Id.* at 650. E3's failure to adhere to the statutory requirements here should be equally fatal, and its civil action should be dismissed under Federal Rule of Civil Procedure 12(b)(5).

2. **E3's Complaint Fails to State a Claim under the DPTA.**

E3's claims under the DTPA are exempted from application of the Act by provision of TEX. BUS. AND COMM. CODE § 17.49(f). This provision prohibits use of the DTPA to recover a claim arising out of a written contract if:

> (1) the contract relates to a transaction, a project or a set of transactions related to the same project involving total consideration by the consumer of more than $100,000;
>
> (2) in negotiating the contract the consumer is represented by legal counsel who is not directly or indirectly identified, suggested, or selected by the defendant or an agent of the defendant; and
>
> (3) the contract does not involve the consumer's residence.

As is apparent from the Licensing Agreement and the addendums each of these conditions to an exemption from the DTPA has been met. A motion under Federal Rule of Civil Procedure 12(b)(6) tests the formal sufficiency of claims stated in the Complaint and must be evaluated solely on the basis of the pleadings. *Doe v. Hillsboro ISD*, 81 F.3d 1395, 1401 (5th Cir. 1996); *Jackson v. Procunier*, 789 F.2d 307 (5th Cir. 1986). The Court must decide whether the material facts alleged would entitle a plaintiff to offer evidence regarding the legal remedy it requests. *Scheuer v. Rhodes*, 416 U.S. 232 (1974). Although the Court is required to accept as true all factual allegations, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1984), conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 925-26 (9th Cir. 1996); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992). Essentially, a motion to dismiss for failure to state a claim tests whether the plaintiff's Complaint, taken at face value and presumed true, demonstrates that he can prove facts—any set of facts

relating to, arising from or suggested by those pleaded—that would entitle him to relief. *Garrett v. Commonwealth Mtg. Co.*, 938 F.2d 591, 594 (5th Cir. 1991).

As to E3's DTPA claims, it simply cannot get to where it needs to be; its claims are all exempted from application of the DTPA under § 17.049(f). While Swick and Klein contend there is abundant reason to dismiss E3's Complaint under either Federal Rule of Civil Procedure 12(b)(5) or 12(b)(7), as set out herein, if this Court does allow this civil action to go forward E3 should be limited to pursuit of its common-law fraud claims, and not be permitted the use of the more liberal pleading and proof provisions of the DTPA.

### 3.     E3's Complaint Fails to Join a Necessary Party.

This civil action without USG makes little sense, and it is clearly a necessary party hereto under Federal Rule of Civil Procedure 19(a). Swick and Klein, as agents of USG, cannot pursue the Company's counterclaims arising from E3's failure to pay for the software it purchased, which should be considered as set-off to E3's ostensible damage claims as set out in its Complaint.[1] Thus "complete relief cannot be accorded among those already parties." It is similarly obvious that USG "claims an interest relating to the subject of the action" and that its absence would "leave [Swick and Klein] subject to a substantial risk of incurring . . . otherwise inconsistent obligations by reason of the claimed interest." The outcome of the Texas state court case now pending against USG should be determinative of Swick's and Klein's obligations here, but there can be no assurances that the

---

[1]     There is no prayer for rescission or reformation of the License Agreement.

state court will reach the fraud claims against USG before this Court considers the claims against the company's agents.[2]

Here there is no reason for this civil action to proceed without USG. While it is a necessary party, it does not appear to be indispensable under Rule 19(b); USG is obviously amenable to service in Texas state courts, and its appearance in this action would not compromise diversity.[3] This Court should order E3 to make USG a party to this civil action under Rule 19(a), and if it refuses to hail USG before this Court, its action should be dismissed. *See, generally, Sladek v. Bell Systems Management Pension Plan*, 880 F.2d 972, 979080 (7th Cir. 1989) (Court must order joinder of necessary party that is amendable to process).

In addition, Rule 19(c) imposes on E3 an obligation to identify all persons prescribed in Rule 19(a), *i.e.*, USG, and to state the reasons why they were not joined. Its Complaint wholly fails to meet this obligation and should either be dismissed or E3 should be ordered to amend it to meet this obligation so that Swick and Klein may properly answer.

## CONCLUSION

E3's civil action against Swick and Klein is both ill-conceived and improperly commenced. Seeking to surprise them, it sought to use of substituted service apparently in hopes of stealing a quick default judgment; it misapplied the Texas Long-Arm Statute and this ploy must fail. E3's civil action should be dismissed on this basis alone. In addition, E3 makes claims under the DTPA that clearly cannot prevail; its claims are exempted from application of the Act by its own admissions,

---

[2] E3's recent actions belie its assertion that it wants to preserve its place on the Texas state court's docket. Just last week, its counsel unilaterally canceled a week's worth of E3 personnel depositions, demonstrating its willingness to speed up or delay those proceedings to suit its purposes, and making the March 2003 trial setting uncertain, at best.

[3] USG is a Delaware corporation with its principal place of business in Florida.

and the very agreements it signed. Finally, E3's civil action fails to join a necessary party. Perhaps this failure has more to do with its attempt to surprise Swick and Klein than anything else, but regardless of its motivations, it must be ordered to join USG or suffer its civil action to dismissal.

Respectfully submitted,

**GODWIN GRUBER, LLP**

By: _/s/ Melinda Wyatt Gilliam_
Michael K. Hurst
State Bar No. 10316310
**Attorney-in-charge**

Phillip W. Offill, Jr.
State Bar No. 75004273

Melinda Wyatt Gilliam
State Bar No. 24032352

Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2084
(214) 939-4400
(214) 760-7332   Facsimile

ATTORNEYS FOR ULTIMATE SOFTWARE GROUP, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this the ___29___ day of January, 2003, a true and correct copy of the foregoing document was served on the below-named opposing counsel in accordance with the Federal Rules of Civil Procedure via both facsimile and certified mail, return receipt requested.

Blake A. Bailey
Brown McCarroll, L.L.P.
2000 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201-2995

_____
Melinda Wyatt Gilliam